# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### NORTHERN DIVISION

JAMES COOK,                    )
                               )
        Plaintiff,          )
                               )
    v.                        )        No. 2:20-cv-00071 SRC
                               )
DANIEL REDINGTON, et al.,      )
                               )
        Defendants.         )

## Memorandum and Order

This matter is before the Court on the request of Plaintiff James Cook for leave to commence this civil action without prepayment of the required filing fee.[1]  Having reviewed the financial information submitted by Cook, the Court has determined that he lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $11.05.  *See* 28 U.S.C. § 1915(b)(1).  Additionally, for the reasons discussed below, the Court will dismiss this action pursuant to 28 U.S.C. § 1915(e)(2)(B).

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee.  If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period.  After payment of the initial partial filing fee, the prisoner is required to make monthly

---

[1]Although Cook has not submitted a separate motion to proceed in forma pauperis, he has submitted a "Declaration of Verification of Plaintiff's Attempts to Receive Account Statement," as well as his prison account statement. The Court will interpret these documents as a request to proceed in forma pauperis in this action.

payments of 20 percent of the preceding month's income credited to the prisoner's account.  28 U.S.C. § 1915(b)(2).  The agency having custody of the prisoner will forward these monthly payments to the Clerk of the Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid.  *Id*.

In support of his request to proceed in forma pauperis, Cook submitted a copy of his inmate account statement.  The account statement shows an average monthly deposit of $55.25.  The Court will therefore assess an initial partial filing fee of $11.05, which is twenty percent of Cook's average monthly deposit.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted.  To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678.  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense.  *Id*. at 679.  The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372–73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

2

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914–15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### Cook's Prior Litigation in this Court

On May 4, 2020, Cook filed a civil complaint in this Court pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights related to his incarceration at Northeast Correctional Center (NECC). *Cook v. Lockhart*, No. 2:20-CV-24 SRC (E.D. Mo). The complaint named the following defendants: Warden Chantay Godert; Correctional Officer Lukendra Lockhart; Nurse Kalley Campbell; Nurse Rachel Slaughter; Dr. Jeffrey McCullum; Dr. Kim Samang; Medical Records Clerk Sandra Shepard; and Medical Contract Monitor Melody Griffin. Defendants were sued in both their official and individual capacities.

On May 26, 2020, Cook filed a "Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction and/or a Temporary Restraining Order." In his motion for injunctive relief, Cook stated that he had been denied medical care and treatment for his serious health

conditions.  He also stated that he had been denied proper therapy, recreation, and a "normal routine prison life."  For relief, Cook sought transfer to a "outcount facility" such as a Halfway House or a specialized transitional housing site.

In his complaint, Cook asserted that he suffered from various medical ailments, resulting in diagnoses of irritable bowel syndrome, internal and external hemorrhoids, constipation, and rectal prolapse.  He alleged that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[2]  Cook also claimed that he had been subjected to retaliation under the First and Eighth Amendments for filing grievances and for his attempts to seek medical care.  Lastly, Cook asserted that his rights were violated under the Eighth Amendment when he was placed in administrative segregation.

On June 22, 2020, the Court reviewed Cook's complaint pursuant to 28 U.S.C. § 1915 for frivolousness, maliciousness and for failure to state a claim.  *Cook v. Lockhart*, 2:20-CV-24 SRC (E.D. Mo).  In a thirty-two page Memorandum and Order, the Court dismissed the official capacity claims against all defendants, as well as the individual capacity claims against defendants Chantay Godert, Kim Samang, and Melody Griffin.  The Court also dismissed Cook's First and Fourteenth Amendment claims.  However, the Court issued process on defendants Correctional Officer Lukendra Lockhart, Nurse Kalley Campbell, Nurse Rachel Slaughter, Dr. Jeffrey McCollum, and Medical Records Clerk Sandra Shepard in their individual capacities as to Cook's Eighth Amendment claims of deliberate indifference to his medical needs.  *Id.*  On this same date, the

---

[2]The denial of medical claims related to different time periods in *Cook v. Lockhart*, No. 2:20-CV-24 SRC (E.D. Mo). For example, Cook alleged that defendant Lukendra Lockhart denied him medical care in May of 2018.  Cook alleged defendants Rachael Slaughter and Kalley Sutton, nurses at NECC, failed to properly treat him for gastrointestinal complaints between June and August of 2018.  Cook further alleged that Nurse Campbell failed to properly treat him for medical complaints in February and April of 2019.  Cook claimed that defendant Sandra Sheppard denied him wipes in August of 2018.  Cook claimed that defendant McCollum improperly denied his request to see a specialist for gastrointestinal complaints and discontinued certain medical supplies in August of 2018.

4

Court denied Cook's motion for injunctive relief under the factors enunciated in *Dataphase Sys., Inc. v. C.L. Sys., Inc.,* 640 F.2d 109, 114 (8th Cir. 1981).

On December 18, 2020, Cook filed a letter with the Court indicating that he was dealing with "harassment and abuse" by staff at NECC, and he needed medical care. Cook claimed that he felt like there was a blood clot in his body, and he was having dizziness, pain, problems breathing, and an irregular heartbeat. He claimed he had recently been seen in the infirmary with cardiac issues. Nonetheless, he alleged that the "institution refuses to let me see a doctor." Cook claimed he was undergoing an "emergency" and was in urgent need of care.

On December 21, 2020, the Court ordered defense counsel to respond within fifteen days to the allegations relayed in Cook's letter. The Court also ordered counsel to investigate and ensure that Cook was receiving appropriate medical attention.

On January 5, 2021, counsel reported that between September 1, 2020 and December 12, 2020, Cook saw a health care provider nine times at his request. However, after December 12, 2020, Cook did not request to see a health care provider. Cook also did not complain of, nor did he exhibit symptoms of a blood clot. And while housed in the administrative segregation unit, Cook was routinely checked in on by staff to determine if he had medical or mental health complaints. Cook expressed no medical or mental health complaints during segregation rounds on December 15, 2020, December 16, 2020, December 17, 2020, December 18, 2020, December 21, 2020, December 22, 2020, and December 23, 2020. On January 8, 2021, the Court, therefore, denied Cook's request for injunctive relief outlined in his letter filed on December 18, 2020.

On January 8, 2021, Cook filed a motion for emergency transfer to a different institution. In his motion for injunctive relief, he stated that he was currently being housed in a wing with "known enemies," and was "afraid tensions will boil." However, he does not want to return to

segregation because he does not want to deal with "continued retaliation by the staff."  Cook also alleged that he has been "continually denied appropriate medical care," and that his complaints are ignored, putting his life in danger.  Cook further alleged that his TB test injection site was "red and sore" and he felt as though he was getting sick.

On January 11, 2021, the Court again denied Cook's request for injunctive relief. Additionally, for the second time, Cook was warned against the filing of frivolous motions.  He was ordered to show cause as to why he should not be sanctioned pursuant to Federal Rule of Civil Procedure 11(c).

On December 31, 2020, defendant Jeffrey McCullum filed a motion to dismiss the allegations against him in Cook's complaint.  In his motion, defendant McCullum asserted that the claims against him should be dismissed because Cook failed to file a health care affidavit against him.  The Court denied defendant's motion to dismiss on February 8, 2021, as Cook's allegations against McCullum arose against him under the Eighth Amendment and not state law medical malpractice.

Cook was transferred from Northeast Correctional Center to Southeast Correctional Center on or about January 25, 2021.[3]

### The Complaint

Cook is a self-represented litigant who is currently incarcerated at the Southeast Correctional Center (SECC) in Charleston, Missouri.  He brings this action pursuant to 42 U.S.C. § 1983.  Cook filed the instant action on November 16, 2020, by filing a document titled, "Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction and/or Temporary Restraining Order."  Although titled as a motion for injunctive relief, Cook's twenty-

---

[3] Cook filed a notice of change of address on January 28, 2021 in *Cook v. Lockhart*, No. 2:20-CV-24 SRC (E.D. Mo).

page document reads like a complaint, as well as a request for injunctive relief against defendants Daniel Redington (Warden, (NECC)), Taylor Preston (Functional Unit Manager, NECC), Lacey Twellman (Case Manager, NECC), and Christine Gilmore (Case Manager, NECC).  The Court will treat Cook's filing as both a complaint and a motion for injunctive relief.

### A.    Denial of Access to the Library

In his complaint, Cook asserts that during the months of August and September of 2020, he made repeated requests to defendants Gilmore and Twellman for legal documents and access to the law library.  Cook claims that his requests were denied.  Cook alleges that these denials by Twellman and Gilmore infringed upon his First Amendment rights.  However, he does not articulate why he believes the denials violated his rights.  Cook also fails to provide factual circumstances relative to the alleged denials for "legal documents" and access to the law library. The Court notes that it appears that Cook was in administrative segregation during this time period.

### B.    Deliberate Indifference to His Medical Needs

Cook asserts in the "Declaration in Support of Plaintiff's Motion for Preliminary Injunction and/or Temporary Restraining Order" that he has "not seen a physician in a year, regardless of [his] many attempts and request."  Cook claims that he is being denied "adequate testing, exams, diagnosis, supplies, medication, and a proper plan of treatment."  Cook alleges that this behavior of my unnamed medical providers "continues to cause [him] conflicts with [his] cellmates."

### C.    Conditions of Confinement

Cook alleges generally that "[he] is not receiving adequate medical treatment or supplies to clean and sanitize [himself] or [his] environment."  Cook does not indicate what type of medical supplies he needs in his cell or what type of disability he has such that he should be provided medical supplies in an administrative segregation cell.  The Court takes judicial notice of his prior

case, in *Cook v. Lockhart*, No. 2:20-CV-24 SRC (E.D. Mo), where he indicated he had a rectal prolapse and hemorrhoids.

Cook claims that his need for medical supplies causes conflicts with most of his cellmates. Cook claims that he continues to make NECC officials aware of these conflicts.  However, Cook states in a conclusory manner that he believes that conduct violations are issued to cover the conflicts up.  Cook does not provide a specific time or date relative to these alleged conduct violations, and thus the Court cannot ascertain the factual circumstances of the conduct violations Cook has received relative to the alleged conflicts he has referred to in his complaint.

Cook states he is continually forced to double cell with others regardless of the "risk." However, Cook does not state which defendant is responsible for placing him in a double cell. Additionally, Cook does not articulate which defendant he has told about the alleged conflicts and who has purportedly "covered" them up by giving him conduct violations.

Cook also asserts that he has not been provided the proper "therapy, recreation, sanitation supplies, equipment and/or assistance needed to live a normal routine prison life."  He claims that NECC's general population and segregation unit are not accessible to Cook's "impairments, disabilities, sanitation requirements or cell arrangements."[4]  Cook, however, does not specify what disabilities and impairments he has, or what type of sanitation requirements or therapy and recreation requirements are necessary for him in either general population or in the segregation unit.  Moreover, Cook has not linked his requests for these alleged necessities to a particular named defendant.

---

[4] Attached to Cook's complaint is a Declaration filed by him. In his Declaration, Cook asserts that he suffers from "multiple medical conditions that cause unsanitary conditions of confinement." He states that he is not receiving adequate medical supplies to clean and sanitize himself or his environment. In paragraph 22 of the Declaration, Cook claims that he suffers from the conditions of hemorrhoids and rectal prolapse.

### D.     Failure to Protect

Cook claims that he has been continually denied protective custody and forced to double-cell with known enemies.  In fact, Cook alleges, that he has been attacked twice by enemies after declaring these individuals on his enemy list.  Cook believes staff arranged these encounters.

Cook alleges that on August 31, 2020, he had an altercation with his cellmate, Avion Allen, as well as Allen's associate, Leroy Payton.  Although unclear, it appears that Cook was in general population during this time period.  He states that Payton and he were sent to segregation that night for fighting one another.  However, once inside segregation, he asked for protective custody, and his request was denied.  Cook does not indicate who he asked for protective custody or who denied his request.  Cook does state that later, Correctional Officer Carter, who is not named as a defendant in this action, told him that he could get a conduct violation for every cellmate whom he refused to cell with.  Cook does not indicate if, in fact, he was ever given a conduct violation for refusing to cell with someone.

Cook states that on September 3, 2020, he was forced to cell with Payton, although he does not indicate who forced him to cell with Mr. Payton.  Cook does not state whether he had placed Payton on his enemies list.  However, he states that he and Payton got into another fight sometime later.

Cook asserts that on or about September 3, 2020, he asked for the Crips Gang members to be declared enemies and he again requested protective custody status.  On September 24, 2020, Cook asserts that Allen was placed in his cell even though he and Allen had declared one another enemies.  Cook again fails to allege who placed Allen into the same cell as him.  He states that both he and Allen were told that they could be given conduct violations if they refused to cell with one another.  However, Cook does not indicate who told this to him and Allen.  However, Cook

9

states that he was told by an unnamed officer that he was being "put in these situations" because the "calls were coming from up top." Cook does not elaborate as to what he took this to mean.

He asserts that on October 2, 2020, he saw the committee for protective custody status, and "was allegedly put in for transfer under PC status." Cook states that on October 23, 2020, he was told that his custody level was raised to a Max-level, and he was removed from his cell and placed in a cell with offender Shane Ewing, the leader of the Crips Gang at NECC. Cook does not, however, identify who allegedly told him that his PC status was raised or who allegedly placed him in a cell with Ewing.

Cook asserts that "multiple correctional officers antagonized conflict" between Ewing and him. However, Cook again fails to identify these individuals by name. Cook claims that one individual even stated, "I don't like your cellmate. You should kick his ass," to Ewing. Again, Cook has failed to identify this individual.

Cook claims that, on November 3, 2020, he was attacked by Mr. Ewing who told him, "COs say you've been snitching." Cook asserts that approximately four days later he learned that Ewing and his lieutenant in the Crips Gang were released from segregation and sent to live in the Honor House.

Cook alleges he had continued "run-ins" with Wardens Chantay Godert and Michelle Thompson, Major Anderson, Correctional Officer Hansen, and Correctional Officer John Doe. None of these individuals have been named as defendants in this action. Moreover, Cook does not state what type of "run-ins" he had with these individuals or how these alleged "run-ins" violated his constitutional rights.

**E.      Request for Relief**

As noted above, Cook was transferred from Northeast Correctional Center to Southeast

Correctional Center on or about January 25, 2021.

For relief in this action, Cook seeks the following:

[A] preliminary injunction and/or temporary restraining order holding that, the
defendants must send Plaintiff to a certified specialist for examination, diagnosis,
and treatment plan for Plaintiff's condition of hemorrhoids and rectal prolapse;
transfer Plaintiff from segregation to the transition car unit at the NECC facility and
provide Plaintiff with sanitation supplies; restrain from any disciplinary and/or
administrative segregation in NECC's housing unit-one "The Hole"; and arrange
for Plaintiff's transfer to a different institution; and dismiss and expunger all
(CDV's) conduct violations that Plaintiff accumulated over the last 18 months as
"unlawful and without fair proceedings"; and arrange for Plaintiff to be reclassified
and assessed.

Doc. 1 at 7.  Cook does not seek damages in his complaint.

**Discussion**

After careful consideration and liberal construction of the allegations of Cook's complaint,

the Court finds that Cook's claims for injunctive relief are moot because Cook is no longer being

held at NECC under the care of defendants.  As such, the Court dismisses this case under 28 U.S.C.

§ 1915(e)(2)(B) on this basis alone.

Additionally, although Cook seeks only present injunctive relief, to the extent his

complaint could be construed as seeking prospective injunctive relief, the Court would still dismiss

his complaint for the reasons explained below.

**A.      Cook's Claims Are Moot Due to His Transfer to SECC**

The Eighth Circuit has consistently held that a prisoner's transfer to a different facility

where the alleged unlawful conduct does not exist, renders moot a prisoner's request for injunctive

relief.  *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (dismissed as moot a prisoner

plaintiff's claim for injunctive relief to improve prison conditions because the plaintiff was

transferred to a different unit); *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978) (prisoner's transfer to a different state penitentiary rendered moot his claim for injunctive relief).  Because Cook has been transferred to a different institution and there is no indication that the same policies are in place at that new institution, his requests for injunctive relief are moot.

Even if Cook's claims are not mooted by his transfer, his complaint fails to state valid claims under the First and Eighth Amendments.

**B.      Even if Cook's Claims Are Not Moot, His Official Capacity Claims Are Subject to Dismissal**

Cook brings this action against four defendants employed by the Missouri Department of Corrections: Daniel Redington (Warden, (NECC)); Taylor Preston (Functional Unit Manager, NECC); Lacey Twellman (Case Manager, NECC); and Christine Gilmore (Case Manager, NECC). Though Cook seeks only present injunctive relief, to the extent he seeks prospective injunctive relief, the Court addresses it below.  The Eighth Circuit recognizes that state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment.  Thus, Cook's official capacity claims are not necessarily barred.  *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007); *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983").  Nevertheless, Cook has failed to state a claim against the State of Missouri, the employer of each defendant in this action.

A governing body can be sued directly under 42 U.S.C. § 1983.  *See Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690 (1978).  To prevail on this type of claim, Cook must establish the governmental entity's liability for the alleged conduct.  *Kelly v. City of Omaha, Neb.,* 813 F.3d 1070, 1075 (8th Cir. 2016).  Such liability may attach if the constitutional violation "resulted from (1) an official . . . policy, (2) an unofficial custom, or (3) a deliberately indifferent

12

failure to train or supervise." *Mick v. Raines,* 883 F.3d 1075, 1079 (8th Cir. 2018); *see also Marsh v. Phelps Cty.,* 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").  Thus, there are three ways in which Cook can assert the liability of the State of Missouri.

First, Cook can show the existence of an unconstitutional policy.  "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the . . . official who has final authority regarding such matters."  *Corwin v. City of Independence, Mo.,* 829 F.3d 695, 700 (8th Cir. 2016).  For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise.  *Szabla v. City of Brooklyn, Minn.,* 486 F.3d 385, 389 (8th Cir. 2007).  However, when "a policy is constitutional on its face, but it is asserted that a [governmental entity] should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers."  *Id.* at 390.  "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [governmental entity's] governing body."  *Angarita v. St. Louis Cty.,* 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, Cook can establish a claim of liability based on an unconstitutional "custom."  To do so, Cook must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That he was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't,* 725 F.3d 825, 828 (8th Cir. 2013).  Finally, Cook can assert liability against a governmental entity by establishing a deliberately indifferent failure to train or supervise.  To do so, Cook must allege a "pattern of similar constitutional violations by untrained employees."  *S.M. v. Lincoln Cty.,* 874 F.3d 581, 585 (8th Cir. 2017).

Cook does not need to specifically plead the existence of an unconstitutional policy or custom.  *Crumpley-Patterson v. Trinity Lutheran Hosp.,* 388 F.3d 588, 591 (8th Cir. 2004).  However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists.  *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk,* 340 F.3d 605, 614 (8th Cir. 2003).

Here, Cook has failed to present facts demonstrating that his constitutional rights were violated due to an unconstitutional policy, an unconstitutional custom, or a deliberately indifferent failure to train or supervise on the part of the State of Missouri.  First, none of Cook's facts support the proposition that the Missouri Department of Corrections has an unconstitutional policy with regard to either unconstitutional conditions of confinement for people with hemorrhoids and/or rectal prolapse.  Cook has also failed to provide facts relative to an unconstitutional policy of a denial of access to courts.  Additionally, Cook has failed to provide facts relative to an unconstitutional policy of a deliberate indifference to his serious medical needs, as noted in *Cook v. Lockhart,* No. 2:20-CV-24 SRC, Doc. 8 at p. 14 (E.D. Mo)  Lastly, Cook has failed to provide facts relative to an unconstitutional policy of a failure to protect him relative to his housing in segregation.  That is, Cook's facts point to no "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [governmental entity's] governing body."  In fact, Cook

14

does not provide any facts showing that Defendants were acting according to any policy set forth by the Missouri Department of Corrections in this action.

Second, Cook's facts do not establish that his constitutional rights were violated due to an unconstitutional custom. Cook has not shown the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct," much less that officials were deliberately indifferent to or tacitly authorized such misconduct. His allegations, rather than indicating widespread misconduct, focus on things that have happened to him, and are insufficient to show they were the result of a custom on the part of the Missouri Department of Corrections.

Similarly, Cook has not shown a "pattern of similar constitutional violations by untrained employees," which is necessary to demonstrate a failure to train. Instead, as noted above, his allegations relate to his own experiences with unnamed individuals at the Missouri Department of Corrections (not even the named defendants), and do not show the existence of a pattern of conduct at NECC.

For all these reasons, to the extent that Cook is seeking prospective injunctive relief, he has failed to state a claim against the State of Missouri. Therefore, his official capacity claims must be dismissed. *See Ulrich v. Pope Cty.,* 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where Cook "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of Cook's rights).

Although Cook has not indicated he sued Defendants in their individual capacities, the Court will address these claims out of an abundance of caution. Even if Cook had sued Defendants in their individual capacities, his claims would still be subject to dismissal.

### C.    Cook's Access to Courts Claims Are Subject to Dismissal

To state a claim premised upon denial of access to the courts, a plaintiff must demonstrate that he suffered an "actual injury." *Lewis v. Casey*, 518 U.S. 343, 351–52 (1996). The Eighth Circuit has recognized that, when bringing an access-to-courts claim, it is insufficient to merely allege a denial of access to a specific resource, even if the denial is systemic. *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996) (citing *Lewis*, 518 U.S. at 353 n.4). Instead, the plaintiff must plead (and ultimately prove) that the lack of the resource deprived him of some specific opportunity to defend himself, or advance a viable legal claim, in a criminal appeal, postconviction matter, or civil rights action. *Id.* Speculation that injuries might occur or could have occurred is insufficient. *Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008) ("Absent an articulation of how the alleged wrongful conduct actually blocked [the prisoner's] access to filing a complaint, or caused a filed complaint to be deficient, [the prisoner's] alleged injuries are merely speculative.").

In the case at bar, Cook pleads no facts tending to show that his purported inability to go to the law library in the months of August and September of 2020 deprived him of an opportunity to defend himself, or advance a viable legal claim, in a criminal appeal, postconviction matter, or civil rights action. Cook's failure to allege such an injury is fatal to his claims for violation of the First Amendment against defendants Twellman and Gilmore.

To the extent Cook is also asserting a claim against Warden Daniel Redington, his claims also fail. "[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). Rather, in a 42 U.S.C. § 1983 case, liability is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are

personally liable only for their own misconduct."  *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir.

2015).   As such, § 1983 liability "requires a causal link to, and direct responsibility for, the

deprivation of rights."  *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Kohl*

*v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing the plaintiff's excessive bail claims

because none of the defendants set the plaintiff's bail, and therefore, "there can be no causal

connection between any action on the part of the defendants and any alleged deprivation" of the

plaintiff's rights).   To that end, a plaintiff must allege facts connecting the defendant to the

challenged action.  *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

Here, Cook has failed to articulate any claims again Warden Redington in his complaint,

let alone establish a link between Redington's actions and an alleged deprivation of Cook's rights.

Thus, any claims against Redington are subject to dismissal.

### D.   Cook's Deliberate Indifference to his Medical Needs Claim are Subject to Dismissal

Cook asserts in the "Declaration in Support of Plaintiff's Motion for Preliminary Injunction

and/or Temporary Restraining Order" that he has "not seen a physician in a year, regardless of

[his] many attempts and request."  Cook claims that he is being denied "adequate testing, exams,

diagnosis, supplies, medication, and a proper plan of treatment."  Cook alleges that this behavior

of unnamed medical providers "continues to cause [him] conflicts with [his] cellmates."

Under the Eighth Amendment, the government has an obligation to provide medical care

to those whom it is punishing by incarceration.  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  To

demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's

conduct amounted to deliberate indifference.  *Dulany v. Carnahan*, 132 F.3d 1234, 1237–38 (8th

Cir. 1997).

To establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *see also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

First and foremost, the Court must note that Cook has not articulated the defendant he believes denied him medical care during the relevant time period. *See Madewell,* 909 F.2d at 1208 (8th Cir. 1990) (liability under 42 U.S.C. § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where the plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured the plaintiff). As a result, the

complaint fails to state a claim upon which relief can be granted. Even if Cook had alleged a specific defendant denied him medical care, his claims would still be subject to dismissal.

Additionally, Cook failed to specify what conditions he suffered from that required treatment or medication, and thus he has not pleaded that he suffers from a serious medical need. *See Coleman*, 114 F.3d at 784. To the extent he disagrees with the medical staff's treatment decisions, mere disagreement does not amount to constitutionally deficient medical care. *Gibson*, 433 F.3d at 646. In short, there are no factual allegations establishing that unnamed medical staff were deliberately indifferent to Cook's needs at NECC during the relevant time period.

For these reasons, even if Cook had brought claims against Defendants in their individual capacities for damages, his claims would be subject to dismissal.

### E.     Cook's Claim for Deliberate Indifference to His Conditions of Confinement Are Subject to Dismissal

Cook alleges generally that "[he] is not receiving adequate medical treatment or supplies to clean and sanitize [himself] or [his] environment."[5] Cook claims that this causes conflicts with most of his cellmates. Cook claims that he continues to make NECC officials aware of these conflicts. However, he believes that conduct violations are issued to cover the conflicts up. Cook states he is continually forced to double cell with others regardless of the risk.[6] However, Cook does not state which defendant is responsible for placing him in a double cell. Additionally, Cook does not articulate which defendant he has told about the alleged conflicts and who has purportedly "covered" them up by giving him conduct violations.

Cook also asserts that he has not been provided the proper "therapy, recreation, sanitation supplies, equipment and/or assistance needed to live a normal routine prison life." He claims that

---

[5] The Court addressed Cook's medical claims, *supra*.
[6] The Court will address the "failure to protect" arguments, *infra*.

NECC's general population and segregation units are not accessible to Cook's "impairments, disabilities, sanitation requirements or cell arrangements."  Cook, however, does not specify what his disabilities and impairments are, or what type of sanitation requirements or therapy and recreation requirements are necessary for him in either general population or in the segregation unit.  Moreover, Cook has not linked his requests for these alleged necessities to a particular named defendant.  *See Madewell*, 909 F.2d at 1208.

The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  To establish a conditions of confinement claim under the Eighth Amendment, a prisoner must demonstrate (1) that the alleged deprivation was "objectively, sufficiently serious" to result in the "denial of the minimal civilized measure of life's necessities," and (2) that the defendant whose act or omission caused the alleged constitutional deprivation behaved with "deliberate indifference to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004).  With respect to the "civilized measure of life's necessities," prison officials are required to ensure that inmates receive adequate clothing, food, shelter, and medical care.  *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 832).

With regard to the Eighth Amendment, Cook has presented no facts showing that his placement in segregation denied him the basic necessities of human life.  *See Revels,* 382 F.3d at 875 (explaining that to demonstrate an Eighth Amendment violation, a prisoner must prove that the defendant's conduct deprived "the plaintiff of the minimal civilized measure of life's necessities").  Cook has also not established a protected liberty interest in avoiding segregation,

because he has not shown that segregation at NECC was an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484; *see also Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (stating that Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*").

Cook has also failed to show that his rights to due process were violated by not granting him "access to intensive care and/or transitional care," because he has not established that such access constitutes a liberty interest. *See Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998) (explaining that to claim a due process violation, Cook has to be deprived of either life, liberty, or property, otherwise "it does not matter whether one has received due process or not"). Furthermore, Cook has not shown that he has a right to have a cell all to himself. *See Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir. 1984) ("Among the liberties which prisoners do not enjoy is choice of cells"); *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (stating that plaintiffs had no right "to be housed in a certain barrack or housing unit, or with certain inmates").

Finally, Cook has failed to show that any of the defendants were deliberately indifferent to his exercise needs by unconstitutionally limiting his recreation. *See Wishon v. Gammon*, 978 F.2d 446, 448–49 (8th Cir. 1992) (explaining that when determining whether an inmate has been deprived of adequate exercise, "courts must consider several factors including: (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement"). Cook has failed to provide any factual allegations in support of his contention that his recreation time is insufficient. Moreover, his conclusory allegations are not sufficient, by themselves, to show a constitutional violation. *See id*. at 449 (determining that forty-five minutes of out-of-cell recreation a week did not violate the constitution); *Hosna v. Groose*, 80

F.3d 298, 306 (8th Cir. 1996) (stating that a limitation of three hours per week did not amount to a constitutional violation).  Cook has failed to indicate exactly how long his recreation time is in segregation, and his lack of factual assertions is fatal to his claim for relief.

**F.     Cook's Failure to Protect Claim is Subject to Dismissal**

The Supreme Court has made it clear that the Eighth Amendment encompasses an inmate's right to be protected from harm by fellow inmates.  *Farmer*, 511 U.S. at 833.  As such, prison officials must take reasonable measures to guarantee inmate safety and protect prisoners from violence by other inmates.  *Berry v. Sherman*, 365 F.3d 631, 633–34 (8th Cir. 2004) (citing *Farmer*, 511 U.S. at 832–33).  There are limitations to this guarantee, however, as "prison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety."  *Patterson v. Kelley,* 902 F.3d 845, 851 (8th Cir. 2018) (internal quotations and citation omitted).

This claim has an "objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk."  *Curry v. Crist,* 226 F.3d 974, 977 (8th Cir. 2000).  "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety."  *Lenz v. Wade,* 490 F.3d 991, 995 (8th Cir. 2007) (quoting *Farmer*, 511 U.S. at 837).  "As prisons are inherently dangerous environments," not every injury suffered by a prisoner at the hands of another inmate, is grounds for constitutional liability.  *Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020) (citing *Farmer*, 511 U.S. at 834).

Cook claims that he has been continually denied protective custody and forced to double-cell with known enemies.  In fact, Cook alleges, that he has been attacked twice by enemies after

22

declaring these individuals on his enemy list.   Cook believes unnamed staff arranged these encounters.

Cook alleges in his complaint that during his time in administrative segregation, he was forced to cell with Leroy Payton after he had gotten in a fight with Payton in general population. Cook also states that he was forced to cell with inmate Avion Allen in administrative segregation even though both he and Mr. Allen had identified one another as an enemy.   Cook states that he, Allen, and Payton were told that they would be given conduct violations if they refused to cell with each other.   Cook does not identify, however, the individuals who allegedly told the inmates this.   Cook also fails to identify the correctional officer who told him that the decision to make these individuals cell together came from "up top."   Cook claims that he ended up in fights with both Allen and Payton.

Cook also alleges that he asked for protective custody status during his time in administrative segregation, in addition to having all Crips Gang members declared enemies.   He states that on October 2, 2020, he saw the committee for protective custody status, and "was allegedly put in for transfer under PC status."   Cook alleges that on October 23, 2020, he was told that his custody level was raised to a Max-level, and he was removed from his cell and placed in a cell with offender Shane Ewing, the leader of the Crips Gang at NECC.   Cook does not, however, identify who allegedly told him that his PC status was raised or who allegedly placed him in a cell with Ewing.

Cook asserts that "multiple correctional officers antagonized conflict" between Ewing and Cook. However, Cook again fails to identify these individuals by name. Cook claims that one individual even stated, "I don't like your cellmate. You should kick his ass," to Ewing.   Again,

Cook has failed to identify this individual.  Cook claims that on November 3, 2020, he was attacked by Ewing who told him, "COs say you've been snitching."

Unfortunately, Cook is unable to show that the named defendants in this action failed to protect him from harm by Allen, Payton and Ewing because Cook has failed to connect these defendants to the alleged altercations with these inmates.  Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights.  *Madewell,* 909 F.2d at 1208; *see also Martin*, 780 F.2d at 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where Cook fails to allege defendant was personally involved in or directly responsible for incidents that injured Cook); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).  In the instant action, Cook has not set forth any facts indicating that any of the named defendants were directly involved in or personally responsible for the alleged violations of the failure to protect violations. As a result, Cook's failure to protect claims are subject to dismissal.

Additionally, Cook has failed to provide any factual information relating to his assertions that he was given conduct violations as a way to purportedly cover conflicts with other inmates up.  These vague and conclusory allegations wholly lack factual support and are not entitled to the presumption of truth.  *See Iqbal,* 556 U.S. at 678.  Even pro se plaintiffs are required to allege facts in support of their claims, and the Court will not assume facts that are not alleged.  *See Stone*, 364 F.3d at 914–15.

Having considered the instant complaint, the Court concludes that it would be futile to permit Cook leave to file an amended complaint.  The Court will therefore dismiss this action pursuant to 28 U.S.C. § 1915(e)(2).

Accordingly, the Court grants Cook's request to proceed in forma pauperis.  The Court orders that Cook must pay an initial partial filing fee of $11.05 within twenty-one (21) days of the date of this order.  The Court instructs Cook to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

The Court denies [1] Cook's motion for a preliminary injunction and/or temporary restraining order and dismisses this case.  The Court further orders that an appeal from this action would not be taken in good faith.  A separate order of dismissal will accompany this order.

So Ordered this 5th day of May 2021.

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**